## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

**CIVIL ACTION NO: 5:97-CV-3-M**

**WARREN SMITH, et al.**                                                        **PLAINTIFFS**

**VS.**               **MEMORANDUM OPINION AND ORDER**

**CARBIDE AND CHEMICALS CORPORATION, et al.**        **DEFENDANTS**

This matter is before the Court on a motion by Plaintiffs for partial summary judgment [DN 393]. Fully briefed, this matter is ripe for decision. For the reasons set forth below, the motion by the Plaintiffs for partial summary judgment is denied.

### I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). It is against this standard that the Court reviews

the following facts.

## II.  FACTS

The Paducah Gaseous Diffusion Plant is a government-owned, contractor-operated uranium enrichment facility located approximately ten miles west of Paducah, Kentucky in northwest McCracken County.  The Paducah Gaseous Diffusion Plant began operations in 1952.  Until it was leased to the United States Enrichment Corporation ("USEC") effective July 1, 1993, PGDP was operated by successive government contractors – Union Carbide Corporation, from 1952 to March 31, 1984; and Martin Marietta Energy Systems, Inc (now Lockheed Martin Energy Systems, Inc.) from April 1, 1984 until June 30, 1993. Lockheed Martin continued to operate PGDP from July 1, 1993 until May 17, 1999, under contract with USEC.  The USEC assumed direct operation of the PGDP in May 1999 and continues to operate the plant today.

The Plaintiffs in this action reside and/or own real property within ten miles of PGDP in the State of Kentucky.  Plaintiffs seek damages for the alleged diminution in the market value of their properties due to alleged soil and/or groundwater contamination caused by the Paducah Gaseous Diffusion Plant operations.  They bring claims under the Price-Anderson Act, 42 U.S.C. § 2014, for intentional trespass, private nuisance, and strict liability for abnormally dangerous activities.  Plaintiffs contend that the groundwater and soil contamination constitute an intentional trespass and a permanent private nuisance that has substantially and unreasonably interfered with the use and enjoyment of their property. Plaintiffs further allege that the Defendants are liable for the contamination under a strict

liability theory based on Restatement (Second) of Torts § 519.[1]

Defendants contend that under the Price-Anderson Act Plaintiffs must prove that the Defendants released contaminants in excess of federal nuclear safety standards in order to prevail on each of their state-law-based tort claims brought under the Act and thus, these claims are preempted by federal law. Plaintiffs filed this motion for partial summary judgment seeking dismissal of Defendants' defense of preemption arguing that under the Price-Anderson Act Plaintiffs do not have to prove that the contaminants at the PDGP plant exceeded federal regulatory standards in order to establish their intentional trespass, nuisance, and strict liability claims under Kentucky law.

### III.  DISCUSSION

This is a public liability action arising under the Price-Anderson Act ("Price-Anderson" or "the Act"), as amended in 1988, 42 U.S.C. §§ 2011, et seq. "The Price-Anderson Act was enacted in 1957 as an amendment to the Atomic Energy Act to encourage private sector investment in the development of nuclear power by limiting the liability of private owners and operators in the event of a nuclear incident." Day v. NLO, Inc., 3 F.3d 153, 154 n. 1 (6th Cir. 1993). In 1988, Congress enacted the Price-Anderson Amendments Act of 1988, which created a federal cause of action for "public liability actions" that arise from nuclear incidents. Id. "As a result, the Act now provides the 'exclusive means' for pursuing claims arising out of any nuclear incident." Koller v. Pinnacle West Capital Corp.,

---

[1] See Smith v. Carbide and Chemicals Corp., 507 F.3d 372 (6th Cir. 2007) for a detailed discussion of the uranium enrichment process and the contamination caused by the PGDP.

2007 WL 446357, *1 (D. Ariz. Feb. 6, 2007)(citing El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 484-85 & n. 6 (1999)). "A claim growing out of any nuclear incident is compensable under the terms of the [Price-Anderson Act] or *it is not compensable at all*." In re TMI Litig. Cases Consol. II, 940 F.2d 832, 854 (3d Cir. 1991); Nieman v. NLO, Inc., 108 F.3d 1546, 1552 (6th Cir. 1997).[2] The Act "converts an ordinary state common-law complaint into one stating a federal claim." Koller, 2007 WL 446357 at *1. According to the Sixth Circuit, "[t]he amendment was not intended to alter the state law nature of the underlying tort claims." Day, 3 F.3d 153, 154 n. 1 (6th Cir. 1993). Instead, the Act provides that "the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with [the Act]." 42 U.S.C. § 2014(hh). Many courts addressing the issue have treated such a complaint as stating "a single Price-Anderson Act cause of action, but with sub-parts based on state law

---

[2] See Roberts v. Florida Power & Light Co., 146 F.3d 1305, 1306 (11th Cir. 1998) ("Congress passed the Price-Anderson Amendments Act of 1988 . . ., creating an exclusive federal cause of action for radiation injury."); O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1100 (7th Cir. 1994)("a new federal cause of action supplants the prior state cause of action."); Nieman v. NLO, Inc., 108 F.3d 1546, 1553 (6th Cir. 1997) ("state law claims cannot stand as separate causes of action. [A plaintiff] can sue under the Price-Anderson Act, as amended, or not at all."); Kerr-McGee Corp. v. Farley, 115 F.3d 1498, 1504 (10th Cir. 1997) ("[The Act's] provisions [are] broad enough to create a federal forum for any tort claim even remotely involving atomic energy production. The PAA on its face provides the sole remedy for the torts alleged ...."); see also El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 485 n. 6 (1999) (Price Anderson "resembles what we have spoken of as a 'complete pre-emption doctrine.'"); In re Berg Litig., 293 F.3d 1127, 1132 (9th Cir. 2002) (PAA is a plaintiff's "exclusive means" for pursuing claims arising from nuclear incident).

theories that are not inconsistent with the Act itself." Wilcox v. Homestake Mining Co., 401 F. Supp. 2d 1196, 1199-1200 (D.N.M. 2005).

The issue presented by this motion for partial summary judgment is whether under the Price-Anderson Act Plaintiffs must prove that the Defendants released contaminants in excess of federal nuclear safety standards in order to prevail on each of their state-law-based tort claims brought under the Act. Every federal circuit that has considered the appropriate standard of care under the Act agrees that federal safety regulations should control. See, e.g., O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1105 (7th Cir. 1994) (holding that "the application of something other than the federal safety regulations as a standard of care is inconsistent with the Price-Anderson scheme"); In re TMI Litig. Cases Consol. II, 940 F.2d at 859 ("states are preempted from imposing a non-federal duty in tort, because any state duty would infringe upon pervasive federal regulation in the field of nuclear safety, and thus would conflict with federal law"); Roberts v. Florida Power & Light Co., 146 F.3d 1305, 1308 (11th Cir. 1998) ("federal safety regulations conclusively establish the duty of care owed in a public liability action"); In re Hanford Nuclear Reservation Litigation, 534 F.3d 986, 1003 (9th Cir. 2008)("Every federal circuit that has considered the appropriate standard of care under the PAA has concluded that nuclear operators are not liable unless they breach federally-imposed dose limits."). See also Nieman v. NLO, Inc., 108 F.3d 1546, 1553 (6th Cir. 1997) (agreeing with the preemption analysis in O'Conner and TMI II and holding that the state law trespass claim "cannot stand as separate causes of action"). While Congress in enacting 42 U.S.C. § 2014(hh) allows state law to provide the substantive rules for decision

in an action brought pursuant to the Price-Anderson Act, "the application of such state law must fit within the carefully constructed regulatory framework." Koller, 2007 WL 446357 at *3.

> Congress has enacted detailed legislation and established a highly specialized administrative agency, the Nuclear Regulatory Commission, to promulgate and enforce regulations to implement the Act. Allowing a complaint based on a state reasonableness standard of care would "put juries in charge of deciding the permissible levels of radiation exposure and, more generally, the adequacy of safety procedures at nuclear plants-issues that have explicitly been reserved to the federal government." In re TMI Gen. Publ. Utils. Corp., 67 F.3d 1103, 1115 (3d Cir. 1995) (citing [Pacific Gas v. State Energy Resources, 461 U.S. 190, 212 (1983)]). Moreover, adoption of such a vague standard "would give no real guidance to operators and would allow juries to fix the standard case by case and plant by plant." Id.

Id. Such a result "would undermine the purpose of a comprehensive and exclusive federal scheme for nuclear incident liability." In re Hanford Nuclear Reservation Litigation, 534 F.3d at 1003. Accordingly, the Court agrees with the clear weight of authority that holds that federal regulatory standards preempt state statutory or common-law standards in Price-Anderson public liability actions.

Plaintiffs rely on Cook v. Rockwell Int'l Corp., 273 F. Supp. 2d 1175 (D. Colo. 2003), in support of their position that under the Price-Anderson Act they do not have to prove that the contaminants at the PDGP plant exceeded federal regulatory standards in order to prove their state-law-based tort claims. The district court in Cook held "that Congress did not intend for federal regulatory standards to preempt state law standards of care in Price-Anderson public liability actions." Id. at 1180. Plaintiffs suggest that this Court should ignore the decision of every Court of Appeals regarding this issue and instead apply the

reasoning of Cook. The district court's opinion in Cook is unsupported by established authority. In fact, the district court in Cook even acknowledged that its decision "is contrary to the existing weight of authority." Cook, 273 F. Supp. 2d at 1193. Thus, the Court declines to adopt the holding of Cook.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Plaintiffs for partial summary judgment [DN 393] is **DENIED**.

cc: counsel of record