UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**CIVIL ACTION NO: 5:97-CV-3-M**

**WARREN SMITH, et al.**                                                                                                   **PLAINTIFFS**

**VS.**                             **MEMORANDUM OPINION AND ORDER**

**CARBIDE AND CHEMICALS CORPORATION, et al.**                                       **DEFENDANTS**

This matter is before the Court on a motion by Defendants to exclude the expert testimony of R. Thomas Waldrop, Jr. [DN 432] and on a motion by Defendants to exclude the expert testimony of Bernd Franke [DN 433].  Fully briefed, these motions are ripe for decision.

### I. Daubert Standard

Defendants seek to exclude or limit the testimony of Plaintiffs' expert witnesses Bernd Franke and Thomas Waldrop on grounds that all or a portion of their opinions do not satisfy the standards of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and Fed. R. Evid. 702.  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert testimony is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)).  In determining whether certain testimony

is reliable, the focus of the Court "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. In Daubert, the Supreme Court identified a non-exhaustive list of factors that may assist the Court in assessing the reliability of a proposed expert's opinion including (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592-94. This gatekeeping role is not limited only to expert testimony based upon scientific knowledge, but, instead, extends to "all 'scientific,' 'technical,' or 'other specialized' matters within" the scope of Rule 702. Kumho Tire, 526 U.S. at 147-48.

## II.  R. Thomas Waldrop, Jr.

Defendants move to exclude the testimony of Plaintiffs' real estate expert, R. Thomas Waldrop, Jr., from trial on grounds that his opinion is neither relevant to the issues that the jury will decide in this case or reliable under the standards articulated in Daubert v. Merrell Dow Pharm. and Fed. R. Evid. 702. Specifically Defendants contend that Waldrop's expert opinions should be excluded because: (1) the diminution in value of the property reported by Waldrop is not based on any actual injury to the property but rather on its reputation as contaminated, which is not compensable under Kentucky law; (2) Waldrop's damage assessment is limited to the alleged diminished value of Plaintiffs' property as of August 1999, instead of the present value of the property; (3) his opinions are based upon an anticipated market reaction; (4) Waldrop failed to use local property sales data to determine the existence or amount of any reduction in value of the property; and (5) Waldrop relied upon the Rocky Flats study of the effects of environmental contamination to determine the percentage of the assumed diminution in value of Plaintiffs'

property.

First, Defendants continue to argue that Plaintiffs have failed to prove actual injury in this case and that their sole injury -- diminished market value of property due to the property's reputation as contaminated -- is not compensable as a matter of law. While it is true that the Plaintiffs cannot rely on diminished market value as evidence of an actual injury, the Sixth Circuit Court of Appeals in remanding the case specifically determined that the Plaintiffs had put forth sufficient evidence of actual injury and interference with the use of their property to withstand summary judgment on both the intentional trespass and private nuisance claims. Thus, in the event the jury finds that the Plaintiffs have suffered actual injury, then Waldrop's opinion regarding the diminution in the fair market value of the property in question will assist the jury in assessing damages.

Second, Waldrop's appraisal of the property in question utilizes the "before and after" valuation process recognized by both federal and state courts in Kentucky. See Rockwell Intern. Corp. v. Wilhite, 143 S.W.3d 604, 607 (Ky. Ct. App. 2003)("the proper measure of permanent damage to real estate in Kentucky is the difference in the fair market value of the real estate just before and after the injury."); Ellison v. R & B Contracting, Inc., 32 S.W.3d 66, 69 (Ky. 2000)( "if the injury to the property is permanent, the amount by which the fair market value of the property decreased immediately prior to and after the trespass" is the measure of damages); Island Creek Coal Co. v. Rodgers, 644 S.W.2d 339, 346 (Ky. Ct. App. 1982). Contrary to Defendants' argument, the absence of evidence regarding the current value of Plaintiffs' property does not impact the reliability of Mr. Waldrop's "before and after" valuation process. Instead, Kentucky courts instruct that the in assessing the permanent damage to real estate, the proper calculations is the fair market value of the land immediate before and after the injury, not the present fair market value of the property in

question.

Third, Waldrop's selection of the August 1999 date to evaluate Plaintiffs' property values does not render his property valuation method unreliable. Waldrop testified that the local real estate market lacked sufficient knowledge of the severity of the contamination to react with lower prices until the August 1999 *Washington Post* article. Although Defendants may not agree with the selection of the August 1999 date, this argument is a matter for cross-examination.

Finally, Waldrop's determination of the "impaired" market value of the property utilizing the comparable sales studies and market data from the Rocky Flat study, as opposed to using local sales data, does not render Waldrop's opinion unreliable. Waldrop explained that there was no purely comparable sales close to the plant that could validly be used for comparable sales. According to Waldrop, it was a small sub-market with relatively few property owners and large portions of land held by the Plant, the Shawnee steam plant, and a wildlife refuge, and therefore, there was not a sufficient quantity of market information in that impaired sub-market to develop a trend line. (Waldrop Dep. at 32 - 41.) Furthermore, Waldrop's reliance upon the Rocky Flats study of the effects of environmental contamination on property values in other states to determine the percentage of the diminution in value of Plaintiffs' property has been accepted by other courts. See Cook v. Rockwell Intern. Corp., 580 F. Supp.2d 1071, 1133 (D. Colo. 2006). Any criticism of Waldrop in relying on the Rocky Flats study, as opposed to local sales data, goes to the weight of Waldrop's testimony and not admissibility. Likewise, the existence of real estate appraisals of the property within six miles of the Paducah Gaseous Diffusion Plant from 2000 to 2009 is a proper matter for cross-examination, but does not render Waldrop's opinions unreliable. For these reasons, the motion to exclude Waldrop's testimony is denied.

### III.  Bernd Franke

Defendants move to exclude the testimony of Plaintiffs' environmental expert, Bernd Franke, regarding historical radionuclide emissions from the Paducah Gaseous Diffusion Plant and the alleged contamination of Plaintiffs' property as a result of these emissions arguing that those opinions are not relevant to the issues the jury will decide and are not based on reliable data and methods.  After discussing this issue with counsel, the Court has decided to conduct a <u>Daubert</u> hearing prior to Franke's testimony at trial.  Accordingly, the Court reserves ruling on this motion until after the <u>Daubert</u> hearing.

### IV.  Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendants to exclude the expert testimony of R. Thomas Waldrop, Jr. [DN 432] is **denied**.  **IT IS FURTHER ORDERED** that the motion by Defendants to exclude the expert testimony of Bernd Franke [DN 433] is **reserved** pending a <u>Daubert</u> hearing.


cc: counsel of record